UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re | ) |
| | ) Chapter 7 |
| TOP LINE GRANITE DESIGN, INC., | ) Case No. 22-40216-EDK |
| Debtor | ) |
| | ) |
| STEVEN WEISS, Chapter 7 Trustee, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Adversary Proceeding No. 24-04010-EDK |
| | ) |
| JEANNE D'ARC CREDIT UNION and | ) |
| EDMILSON RAMOS | ) |
| | ) |
| Defendants | ) |

AMENDED COMPLAINT

Introduction

1. This is an adversary proceeding brought by Steven Weiss, Chapter 7 Trustee (the "Trustee") seeking to recover fraudulent transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to Jeanne D'Arc Credit Union ("JDCU") for the sole benefit of Edmilson Ramos ("Ramos") pursuant to 11 U.S.C. §§ 548, 550, and G.L. c. 109A. The Trustee hereby amends the original complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B) and Fed. R. Bankr. P. 7015.

Parties

2. The Plaintiff Trustee is an individual practicing law with Shatz, Schwartz and Fentin, P.C., with a business address of 1441 Main Street, Suite 1100, Springfield, Massachusetts, 01103.

3. The Defendant JDCU is a state-chartered credit union organized under the laws of the Commonwealth of Massachusetts, with a business address of 658 Merrimack Street, Lowell, MA 01854.

4. The Defendant Ramos is a natural person residing at 290 Massapoag Road, Tyngsborough, MA 01879 (the "Residence").

Jurisdiction and Venue

5. This Court has jurisdiction over the core proceeding set forth in Count I pursuant to 28 U.S.C. § 157(b)(2)(H).

6. This Court has jurisdiction over the non-core proceeding set forth in Count II pursuant to 28 U.S.C. § 1334(b).

7. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408-1409.

Facts

8. On March 25, 2022 (the "Petition Date"), Top Line filed a petition for relief under Chapter 11 as a Subchapter V debtor.

9. On June 29, 2023, the case was converted to a case under Chapter 7, and the Plaintiff was appointed as Chapter 7 Trustee.

10. At all times relevant hereto, Ramos was the sole shareholder and President of Top Line.

11. At all times relevant hereto, Ramos resided at the Residence.

12. On or about November 25, 2019, Ramos, personally, executed and delivered a promissory note in the original amount of $1,872,500.00 (the "Note") to JDCU.

13. On information and belief, no proceeds from the loan underpinning the Note were received by or used for the benefit of Top Line.

14. As security for payment of the Note, Ramos granted JDCU a first mortgage on the Residence.

15. Top Line neither co-signed the Note nor guaranteed Ramos's payment of the Note.

16. Top Line had no contractual obligation to Ramos, to JDCU, or to any other party to make payments under the Note.

17. Top Line had no ownership interest in the Residence.

18. Ramos caused Top Line to make payments of his personal obligations under the Note to JDCU.

19. Top Line received no benefit from its payments of Ramos's personal obligations under the Note to JDCU.

20. At all times relevant hereto, Top Line was engaged in or about to engage in business or transactions for which its remaining assets were unreasonably small in relation to such business or transactions.

21. As of the Petition Date, Top Line reported total assets of $4,825,100 and total liabilities of $16,184,913.64. [Doc 44]

22. In the one year leading up to and including the Petition Date, Ramos caused Top Line to transfer $153,495.10 to JDCU. A schedule setting forth those transfers is attached hereto as Exhibit B.

23. The particularity requirement for pleading fraud set forth in Fed. R. Civ. P. 9(b) "is relaxed when such claims are brought by a trustee who must plead from second-hand knowledge." *In re Comprehensive Power, Inc.*, 578 B.R. 14, 24 (Bankr. D. Mass. 2017).

<u>COUNT I – AVOIDANCE OF FRAUDULENT TRANSFERS<br>PURSUANT TO 11 U.S.C. § 548</u>

24. The facts set forth above are incorporated as if fully set forth herein.

25. Upon information and belief, in the two years before the Petition Date, Top Line made transfers to JDCU in the aggregate amount of approximately $306,990.20 (collectively referred to as the "Federal-Period Transfers"). At this point, the Trustee does not have sufficient information to create a detailed schedule of the Federal-Period Transfers.

26. Top Line did not receive reasonably equivalent value, or any value, in exchange for the Federal-Period Transfers. There was no direct or indirect benefit to Top Line as a result of the Federal-Period Transfers.

27. At the time the Federal-Period Transfers were made, Ramos knew or should have known that Top Line had incurred or would incur debts beyond its ability to pay as they became due.

28. At the time the Federal-Period Transfers were made, Top Line was insolvent, or became insolvent as a result of the transfers, in that its liabilities substantially exceeded its assets.

29. The Federal-Period Transfers were made for the benefit of Ramos, an insider of Top Line, not in Top Line's ordinary course of business, and not pursuant to any contractual obligation of Top Line.

30. Top Line's bankruptcy estate is administratively insolvent and its innocent creditors are substantially harmed by the amount of the Federal-Period Transfers not being included within the bankruptcy estate. Had the Federal-Period Transfers not been made, there would be assets available for distribution to Top Line's creditors.

31. The Federal-Period Transfers to JDCU at the least constitute constructively fraudulent transfers within the meaning of 11 U.S.C. § 548 and may be voided.

## COUNT II – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO G.L. c. 109A

32. The facts set forth above are incorporated as if fully set forth herein.

33. Upon information and belief, between December 1, 2019, and the Petition Date, Top Line made transfers to JDCU in the aggregate amount of approximately $345,363.98 (collectively referred to as the "State-Period Transfers"). At this point, the Trustee does not have sufficient information to create a detailed schedule of the State-Period Transfers.

34. Top Line did not receive reasonably equivalent value, or any value, in exchange for the State-Period Transfers. There was no direct or indirect benefit to Top Line as a result of the State-Period Transfers.

35. At the time the State-Period Transfers were made, Ramos knew or should have known that Top Line had incurred or would incur debts beyond its ability to pay as they became due.

36. At the time the State-Period Transfers were made, Top Line was insolvent, or became insolvent as a result of the State-Period Transfers, in that its liabilities substantially exceeded its assets.

37. The State-Period Transfers were made for the benefit of Ramos, an insider of Top Line, not in Top Line's ordinary course of business, and not pursuant to any contractual obligation of Top Line.

38. Top Line's bankruptcy estate is administratively insolvent and its innocent creditors are substantially harmed by the amount of the State-Period Transfers not being included within the bankruptcy estate. Had the State-Period Transfers not been made, there would be assets available for distribution to Top Line's creditors.

39. The State-Period Transfers at the least constitute constructively fraudulent transfers within the meaning of G.L. c. 109A, §§ 5-6 and may be voided.

WHEREFORE, the Trustee respectfully requests that this Honorable Court:

1. On Count I, enter an order determining that the Transfers from Top Line to Jeanne D'Arc Credit Union for the benefit of Edmilson Ramos constitute fraudulent transfers pursuant to 11 U.S.C. § 544, and enter judgment against Jeanne D'Arc Credit Union and Edmilson Ramos, jointly and severally, in an amount to be determined at trial, plus interest and costs;

2. On Count II, enter an order determining that the Transfers from Top Line to Jeanne D'Arc Credit Union for the benefit of Edmilson Ramos constitute fraudulent transfers pursuant to G.L. c. 109A, and enter judgment against Jeanne D'Arc Credit Union and Edmilson Ramos, jointly and severally, in in an amount to be determined at trial, plus interest and costs; and

3. Grant such further relief as this Court deems just and proper.

Respectfully submitted,
For the Plaintiff,
STEVEN WEISS, CHAPTER 7 TRUSTEE,
By his attorneys,

/s/ Steven Weiss
Steven Weiss, BBO # 545619
Mark J. Esposito, BBO # 672638
Shatz, Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA 01103
(413) 737-1131
(413) 736-0375 (f)
sweiss@ssfpc.com
mesposito@ssfpc.com

Dated: July 2, 2024

22\0137\Avoidance Claims\Complaint - Jeanne D'Arc\Amended Complaint

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re )<br>)<br>TOP LINE GRANITE DESIGN, INC., )<br>        Debtor )<br>) | Chapter 7<br>Case No. 22-40216-EDK |
| STEVEN WEISS, Chapter 7 Trustee, )<br>        Plaintiff )<br>)<br>v. )<br>)<br>JEANNE D'ARC CREDIT UNION and )<br>EDMILSON RAMOS )<br>)<br>        Defendants ) | Adversary Proceeding No. 24-04010-EDK |

## **CERTIFICATE OF SERVICE**

      I, Steven Weiss, of Shatz Schwartz and Fentin, P.C., do hereby certify that on July 2, 2024, a copy of the Amended Complaint was mailed via electronic and/or first-class mail, postage pre-paid, to the following:

Paul R. Mayotte, President  
Jeanne D'Arc Credit Union  
658 Merrimack Street  
Lowell, MA 01854

Nora R. Adukonis  
Litchfield Cavo LLP

6 Kimball Lane  
Suite 200  
Lynnfield, MA 01940

Edmilson Ramos  
347 Middlesex Road  
Tyngsboro, MA 01879

                                      /S/ Steven Weiss  
                                      Steven Weiss, Esquire