UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re<br><br>TOP LINE GRANITE DESIGN, INC.,<br>                Debtor | Chapter 7<br>Case No. 22-40216-EDK |
| STEVEN WEISS, Chapter 7 Trustee,<br>                Plaintiff<br><br>v.<br><br>JEANNE D'ARC CREDIT UNION and<br>EDMILSON RAMOS,<br>                Defendants | Adversary Proceeding No. 24-04010-EDK |

**OPPOSITION OF JEANNE D'ARC CREDIT UNION
TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

Defendant Jeanne D'Arc Credit Union ("JDCU") opposes Trustee's Motion for Summary Judgment [A.P. ECF No. 51], on the basis that Plaintiff-Trustee (a) failed to establish the absence of any genuine dispute of fact as to whether debtor was insolvent at the time of the transfers at issue; (b) failed to establish the absence of any genuine dispute of fact as to whether debtor received reasonably equivalent value, and (c) rather than establishing any fact by material of evidentiary quality, replies solely on an "expert report" ("Wesler Report") which fails to satisfy the standards for admission under Fed. R. Evid. 702, and therefore, consideration under Fed. R. Civ. P. 56.[1]

---

[1] JDCU filed a Motion to Strike this Report from consideration in the Trustee's Motion for Summary Judgment, as well as preclude such testimony at the eventual trial of this matter. [A.P. ECF No. 60]

1

## I. LEGAL STANDARD: MOTION FOR SUMMARY JUDGMENT

Summary judgment is granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) as made applicable to the instant matter by Fed. R. Bankr. P. 7056; *United Parcel Serv. v. Flores-Galarza*, 318. F.3d 323, 330 (1st Cir. 2003). "Where, as is the case here, the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail 'unless the evidence that he provides on that issue is conclusive.'" *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002). When a plaintiff moves for summary judgment, accordingly, the "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

## II. ARGUMENT: THE TRUSTEE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON HIS AVOIDANCE OR FRAUDULENT TRANSFER CLAIMS

Plaintiff-Trustee initiated his adversary complaint on March 6, 2024, including two counts: Count I, pursuant to G. L. c. 109A §5(a), the Uniform Fraudulent Transfer Act ("UFTA") and Count II, pursuant to 11 U.S.C. § 548. Relief under either statute requires Plaintiff-Trustee to establish that the debtor did not receive reasonably equivalent value for the transfer, and that the transfer occurred while debtor was insolvent. *See In re Neri Bros. Constr. Corp.,* 593 B.R. 100, 147–48 (Bankr. D. Conn. 2018).

**1. Plaintiff-Trustee has failed to establish an absence of any genuine dispute as to whether debtor was "insolvent" on the date of transfer.**

"[P]roof of insolvency is a traditionally difficult burden." *In re KZK Livestock, Inc.,* 290 B.R. 622, 630 (Bankr. C.D. Ill. 2002). "To prove insolvency, the trustee must show by a preponderance of the evidence that the debtor's liabilities exceeded its assets." *In re Kaypro,* 218 F.3d 1070, 1076

(9th Cir. 2000). "The determination of insolvency generally presents complex factual determinations that seldom lend themselves to disposition by summary judgment." *In re KZK Livestock, Inc.,* 290 B.R. at 626. The burden of proof cannot be carried by expert testimony alone, but requires admissible, non-hearsay evidence of the debtor's financial condition on the dates at issue. *In re Lake States Commodities, Inc.*, 271 B.R. 575, 586 (Bankr. N.D. Ill. 2002) *aff'd sub nom. Fisher v. Page*, No. 01 C 1698, 2002 WL 31749262 (N.D. Ill. Dec. 3, 2002) (*citing CSI Enterprises, Inc.,* 220 B.R. 687 (Bankr. D. Colo.1998), *aff'd,* 203 F.3d 834, 2000 WL 93989 (10th Cir.2000)).

**a. Plaintiff-Trustee has not established an absence of any dispute of fact as to the value of the debtor's property, nor of the amount of debts, as of the relevant dates.**

"Proof of insolvency 'contemplates a showing of the fair value of all the debtor's property, compiled by the use of balance sheets, financial statements, appraisals, expert testimony, and other affirmative evidence and compared to the amount of his debts.'" *KZK Livestock, Inc.*, 290 B.R. at 625 (citing *In re R. Purbeck & Associates, Ltd.*, 27 B.R. 953, 955 (Bankr. D. Conn. 1983) and *In re Phippens,* 4 B.R. 155, 159 (Bankr. M.D. Tenn. 1980)). "Such a determination will ordinarily begin with audited financial statements, prepared in conformity with generally accepted accounting principles (GAAP) and extend to an examination of the financial records of the debtor, including bank account statements, journals, ledgers, tax returns, and all contracts, notes and security agreements." *Id.* Where these records are not complete, the trustee must reconstruct the debtor's financial condition, from whatever sources are available." *Id.*

Neither the Plaintiff-Trustee nor his experts have made any attempt to "reconstruct" debtor's financial condition on the date of the transfers at issue. Rather, acting almost as fact-finders, Plaintiff-Trustee's experts selected portions of the debtor's balance sheets, and reclassified items as "debt." The terms of the "loans" giving rise to these reclassified items are not in the record,

and were not reviewed by the experts.[2] There is no evidence to suggest that the debtor had an obligation to repay. The trustee has the burden to establish that debtor's debts exceeded its assets; it cannot meet this burden simply by retaining experts who are content to infer "debt" from the absence of evidence. *CSI Enters., Inc.,* 220 B.R. at 697 ("Clearly, it is not an opinion formulated by him after an audit or any search for the truth of the actual amount of the indebtedness. An expert's testimony cannot be used to subvert the rules of evidence."). *KZK Livestock,* 290 B.R. 622 (holding that "insolvency analysis" that relied solely on hog inventory records and value of hogs was not admissible and could not be used to meet trustee's burden of proof as to insolvency) see also *Lake States Commodities, Inc*., 271 B.R. at 587 (expert opinion on insolvency derived from incomplete information, without even interviewing witnesses, had no weight, and would've been inadmissible had a motion been brought to strike it from consideration).

**b. Debtor's balance sheets indicate that its assets exceeded its liabilities during the relevant period, and the trustee has not shown, with undisputed evidence, that the balance sheets are not accurate.**

Balance sheets prepared by debtor's accountant show that debtor's assets exceeded its liabilities during the relevant period. [Doc. 53-7]. Debtor's accountant prepared these balance sheets, and testified at deposition concerning the process used to prepare them[3]. The documents upon which debtor's accountant relied were maintained electronically and turned over to the trustee. [Doc. 53, ¶ 7].

Plaintiff-Trustee contends that the debtor was insolvent. As proof, Plaintiff-Trustee has supplied the report of two accountants, Kristin Lytle and Cheryl Wesler. Ms. Lytle and Ms. Wesler opine that the debtor was insolvent from December 31, 2019, through the petition date of

---

[2] **Exhibit 3**, 33: 15-23, 49:12-17; **Exhibit 2**, 85:15-23; **Exhibit 4,** 27:17-23. 27:24-25; 28: 24-25; 29: 1-3. 29:4-19; 30:8-14. 32:16-21; 33:1-11; 33:22-24; 34:3-6. 34:7-10; 34:11-13; 35:3-25; 36: 1-18; 50: 1-11.
[3] **Exhibit 5,** 44:2-13.

March 25, 2022. The basis for this opinion is an "edited version" of the debtor's balance sheets, in which nine items originally listed as "assets" were moved into "liabilities." Ms. Lytle and Ms. Wesler "reclassified" these items based on the items being described as "loans."[4] Ms. Wesler and Ms. Lytle[5] did not review any of the documents associated with these "loans," nor did they take any steps to ascertain whether the debtor had an obligation to repay any of the amounts listed. Ms. Wesler and Ms. Lytle also did not review Mr. Ramos' W2s for the relevant time period[6], Mr. Ramos' personal bank accounts[7], QuickBooks[8], monthly financial reports[9], or any loan documents[10].

Neither the total amount of claims from creditors at the commencement of bankruptcy[11], nor cash flow problems, are evidence, nonetheless conclusive evidence, of insolvency on the day of transfer. *Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573, 577 (1st Cir. 1980) (citing *McDonald v. Clearwater Railway Co.,* 164 F. 1007 (9th Cir. 1908)) ("[T]he fact that the debtor has overdrawn his bank account or has other cash flow difficulties does not" establish a presumption of insolvency"); *Stevenson v. H. Hicks & Co., Inc.*, No. 03-CV-70927-DT, 2004 WL 7331167, at *12 (E.D. Mich. Sept. 1, 2004), *report and recommendation adopted,* No. 03-CV-70927-DT, 2005 WL 8154396 (E.D. Mich. Aug. 5, 2005) (insolvency on petition date cannot establish insolvency on date of transfer). Apart from the "reclassification" of debt, trustee

---

[4] **Exhibit 3**, 45: 4-9.
[5] **Exhibit 3**, 72:22-25; 73:1-2. It should also be noted that when reviewing documents underlying the Merchant Cash Lenders, one of them was to Mr. Ramos personally, not the Debtor. **Exhibit 4**, 114:19-24.
[6] **Exhibit 3**, 63: 14-24.
[7] **Exhibit 4**, 42:24-25; 43: 1-7.
[8] "I would have loved to get into that QuickBooks file." **Exhibit 4**, 48: 14-18. The lack of access to QuickBooks was further verified by the Trustee as well as Ms. Wesler. **Exhibit 2**, 37:17-19; **Exhibit 3**, 54:21-22.
[9] **Exhibit 4**, 48:14-18.
[10] **Exhibit 3**, 33: 15-23, 49:12-17. **Exhibit 2**, 85:15-23; **Exhibit 4**, 27:17-23. 27:24-25; 28: 24-25; 29: 1-3. 29:4-19; 30:8-14. 32:16-21; 33:1-11; 33:22-24; 34:3-6. 34:7-10; 34:11-13; 35:3-25; 36: 1-18; 50: 1-11.
[11] While a trustee may demonstrate insolvency on a given date, and establishing no change in financial condition thereafter (*Hassan v. Middlesex Cnty. Nat. Bank*, 333 F.2d 838, 840–41 (1st Cir. 1964) this is not what the Plaintiff-Trustee argues in its motion for summary judgment.

has offered no evidence of insolvency on any date.[12] As such, the Plaintiff-Trustee's Motion for Summary Judgment should be denied.

### 2. Plaintiff-Trustee has failed to establish an absence of any genuine dispute as to whether the debtor received "less than reasonably equivalent value" for payments made on behalf of Edmilson Ramos.

The Trustee cannot satisfy the requirement of proving that the Debtor received less than equivalent value, a determination based on all facts and circumstances of the case. *In re Tri-Star,* 260 B.R. at 325. The court must compare what was given with what was received, considering both direct and indirect benefits. *Id., see also, Riley v. Countrywide Home Loans, Inc., et. Al. (In re Duplication Mgmt., Inc.),* 501 B.R. 462, 486 (Bankr. D. Mass. 2013). The Plaintiff-Trustee has the burden of proof and of persuasion on this issue.

### a. Edmilson Ramos has testified that the proceeds of the cash-out refinance were used in his business, notwithstanding the stated purpose of the loan.

The mortgage issued by JDCU to Edmilson Ramos was a "cash-out refinance," resulting in a disbursement of $376,553.69 to Mr. Ramos in November of 2019. SOF ¶ 6. Mr. Ramos has always maintained that he put at least some of this money into "his business," i.e., debtor Top Line Granite Designs.[13] There is evidence that Mr. Ramos "put" approximately $400,000.00 into Top Line Granite Designs by the end of 2019.[14]

Notwithstanding that debtor was not the "borrower," or "guarantor" of the loan, it cannot be said that it received no benefit from it. Trustee has offered no evidence to dispute Mr. Ramos' testimony that he "put" money from the loan into his business. Trustee has not reviewed, and does

---

[12] There is also no evidence in the record that these payments would have rendered the Debtor insolvent. The payment amounts were varied, both in amount and timing, and never amounted to more than $11,247.20 for any given month.
[13] See SOF ¶ 9.
[14] **Exhibit 5**, 56:13-15.

6

not point to any documents that refute Mr. Ramos' statements and allegations concerning use of the loan proceeds.[15] Trustee admitted undertaking no effort in order to ascertain whether Mr. Ramos in fact used the loan proceeds in his business.[16]

**b. Edmilson Ramos performed substantial work for the debtor during the entire period at issue, including sales, marketing, collections, and physical labor, and testified that he understood the mortgage payments to be compensation for his work.**

In addition to the direct capital contributions made on behalf of Mr. Ramos, he also performed substantial work and added benefit to the Debtor up and until the company ceased operations in 2023. Mr. Ramos testified at length during his deposition[17] about all of the work he performed on behalf of the Debtor, including but not limited to bringing in new clients as late as 2021[18], and making sure the Debtor was paid by those clients.

Mr. Ramos testified that he was instructed by his accountants to report the mortgage payments as "distributions."[19] How a payment was reported by Mr. Ramos is not dispositive of its nature, nor is it binding on JDCU.

## CONCLUSION

Where summary judgment is sought based primarily on expert testimony, and opposed by a competing affidavit, "[t]he court must not weigh the strength of the opposing parties' testimony, but should instead give the benefit of all reasonable inferences regarding the contested facts to the nonmoving party." *In re Bonham*, 251 B.R. 113, 132–33 (Bankr. D. Alaska 2000). "If there is more than a scintilla of evidence presented by the nonmovant, the court should not decide the

---

[15] The Trustee did not diligently attempt to access the QuickBooks records. Rather, Mr. Ramos was asked for his password, which was not accurate, and nothing else was done to obtain these records.
[16] **Exhibit 2**, 128:19-24; 131: 20-22. Further, as the Trustee retains the Debtor's QuickBooks, JDCU has been unable to review those records, as well.
[17] See SOF ¶ 24.
[18] Mr. Ramos brought in a job from NEI in February of 2021 which generated approximately $300,000.00 for the Debtor. **Exhibit 1**, 79:21-15; 78:1.
[19] **Exhibit 5**, 14:20-25; 15:1-2; 15:7-15; 15:20-25; 16:1-3; 16:4-8; 16:11-19; 21: 2-7. 22:20-25. **Exhibit 3**, 66: 4-5.

7

matter based on who presented the more compelling affidavits; there should, instead, be a trial on the merits." *Id.*

Plaintiff-Trustee has not established its entitlement to judgment as a matter of law. There are material factual issues in dispute with respect to both the Debtor's insolvency and the receipt of reasonably equivalent value and, therefore, the fraudulent transfer claims should proceed to trial.

WHEREFORE, JDCU respectfully requests that the Court:

1. Deny the Plaintiff-Trustee's Motion for Summary Judgment; and
2. Grant such other relief as the Court deems just and proper.

                                 Respectfully Submitted,
                                 The Defendant,
                                 JEANNE D'ARC CREDIT UNION,
                                 By Its Attorneys,

                                 */s/ Jessica Studstill*

                                 _____
                                 Nora R. Adukonis, BBO #676932
                                 Jessica C. Studstill, BBO #684924
                                 Litchfield Cavo LLP
                                 6 Kimball Lane, Suite 200
                                 Lynnfield, MA 01940
                                 (781) 309-1500
                                 adukonis@litchfieldcavo.com
                                 studstill@litchfieldcavo.com

**CERTIFICATE OF SERVICE**

      I, Jessica C. Studstill, do hereby certify that on this 23rd day of December 2025, I served a copy of the within document upon all counsel of record as follows:

| | |
|---|---|
| Steven Weiss, Esq. | Edmilson Ramos |
| Mark J. Esposito, Esq. | 290 Massapoag Road |
| Shatz, Schwartz and Fentin, P.C. | Tyngsborough MA 01879 |
| 1441 Main Street, Suite 1100 | ramosedmilson@hotmail.com |
| Springfield, MA 01103 | |
| sweiss@ssfpc.com | |
| mesposito@ssfpc.com | |
| *Via Electronic Mail* | |
| *Counsel for Plaintiff* | |

_____
Jessica C. Studstill