# EXHIBIT 6

UNITED STATES BANKRUPCTY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>TOP LINE GRANITE DESIGN, INC.,<br><br>Debtor | Chapter 7<br>Case No. 22-40216-EDK |
| STEVEN WEISS, TRUSTEE,<br>                    Plaintiff<br>vs.<br><br>JEANNE D'ARC CREDIT UNION and<br>EDMILSON RAMOS,<br>                    Defendants | Adversary<br><br>Proceeding No.<br><br>24-04010 |

## AFFIDAVIT OF JULIE QUINK, CPA, CFE

I, Julie Quink, CPA, CFE state the following to the best of my knowledge, information and belief:

1. I am a forensic accountant who has been engaged to review the Expert's Report (Report) prepared by Wesler & Associates CPA, PC (Wesler), dated July 18, 2025, in the above-captioned matter. I have reviewed related deposition summaries (Depositions) relative to the above-captioned matter. I have reviewed other filings and subject matter related to the case including the Memorandum of Law in Support of Motion for Summary Judgment (Memorandum) filed by the Plaintiff.
2. I am a Certified Public Accountant, licensed in the Commonwealth of Massachusetts and also a Certified Fraud Examiner.
3. A copy of my most recent Curriculum Vitae is attached hereto.

1

# OBSERVATION ONE: ASSUMPTIONS ABOUT THE NATURE OF ITEMS LISTED AS LOANS ON THE DEBTOR PROVIDED BALANCE SHEETS

4. The methodology used by Wesler in their Report to support recharacterizing various accounts included in the equity section, under distributions, of the Debtor Provided Version of the balance sheets of Top Line Granite Design, Inc (the Debtor) to long-term liabilities was, in many instances, based on assumption that the item was a loan due to the titling of the account. In deposition testimony, Kristin Lytle and Cheryl Wesler (Experts) detailed that in many instances, assumptions were made that items should be reclassified as loans based on the title of the account on the balance sheets. In addition, it was also mentioned that the QuickBooks file used to prepare the returns and also the source of the Debtor Provided Version of the balance sheets was not available for review and validation of the amounts. Supporting documents for the items titled with loan were also identified as unavailable, in most cases, during expert testimony and also in the Report.

5. In the absence of substantiating support for an item titled as a loan, the assumption was made that the item was a loan rather than a component of equity as listed on the balance sheets provided by the Debtor. The Report and Depositions did indicate that, where available, amounts were compared to creditor filings under the bankruptcy proceeding. The largest item recharacterized to a loan, reflected in long-term liabilities, was in an account titled Misc Loans. The assumption was made that this account included a $2 million loan from the SBA, absent supporting detail for what was included in the Misc Loans account on the balance sheets. The recharacterization of this Misc Loans account from equity to a long-term liability significantly negatively impacted the analysis of solvency and in fact, created the appearance of insolvency in several of the years, without sufficient support to detail what comprised this account. This Misc Loans account was one of several significant amounts that were reclassified to loans without substantiation for the balance and nature of the item that could have impacted the determination of solvency.

6. Assumptions that items should be classified based on the title of the account on the balance sheets would lead to inaccuracies, some of which may be material in determining whether the Debtor was insolvent and at what point the Debtor became insolvent. The amounts recharacterized as loans in long-term liabilities by Wesler were material and significant in nature and should have been supported by corroborating evidence.

## OBSERVATION TWO: CONTRIBUTED CAPITAL, EQUITY, DISTRIBUTIONS AND BASIS

7. On the Debtor provided balance sheets, the amounts recharacterized as loans were initially reflected as a component of equity, under distributions. Acknowledgement was provided by the Experts that if Mr. Ramos borrowed money personally and loaned it to the Debtor, it could be appropriately categorized as a component of equity. However, corroborating evidence was not obtained to substantiate the loans in most instances, and the assumption was made that Mr. Ramos could not have borrowed the money personally and loaned the funds to the Debtor.

8. In fact, the ability to contribute capital to the Debtor by Mr. Ramos in the amounts listed on the balance sheets was questioned based on his personal financial assets and salary taken from the Debtor, which was identified as $100,000 in deposition testimony. A review of personal tax returns and a personal financial statement would have been important in determining Mr. Ramos' personal financial ability to make those capital contributions. Further, review of a personal financial statement would have identified other personal assets of Mr. Ramos that could have been utilized to fund capital contributions to the Debtor. The Report indicates that they reviewed some years of Mr. Ramos' personal returns but not personal financial statements. Review of personal financial information for Mr. Ramos would have been key in making a determination of his personal ability to contribute funds to the Debtor. Absent that information, it would be difficult at best to make the determination and statement during deposition testimony, that he would not have the personal financial solvency to make those contributions of capital.

9. In their Report, the Experts did not reclassify amounts listed as additional paid in capital on the balance sheets. In testimony, it was indicated that the additional paid in capital amounts were unsupported. The approach of leaving unsupported additional paid in capital in equity was noted as being conservative in deposition testimony. However, the approach of reclassifying amounts from equity to loans based on their account title, without substantiation of the character of the item, was deemed to be appropriate in their Report. There is a lack of consistency in their approach to treatment of items such as equity and loans, which would impact the determination of insolvency given the significance of the amounts involved.
10. Reference is made during Expert deposition testimony as to shareholder basis and when distributions and losses from the Debtor would be able to be used on Mr. Ramos' personal income tax returns. Capital contributions by Mr. Ramos to the Debtor create basis and distributions to Mr. Ramos decrease basis. Basis information was provided in Mr. Ramos' personal return on Form 7203, which is a required form beginning with 2021. Form 7203 details the roll forward of basis from year to year for Mr. Ramos and his investment in the Debtor. Prior to 2021, it appears that basis schedules and information were included in Mr. Ramos' personal tax returns. These basis schedules and information indicate that Mr. Ramos had sufficient basis to utilize some losses from the Debtor. As such, there would be basis to allow for taking some distributions from the Debtor without incurring personal income to Mr. Ramos.
11. The Debtor received funding from the Paycheck Protection Program and the Mass Capital Grant totaling over $330,000, which would add to Mr. Ramos' basis in the Debtor. Consideration of this funding and impact on basis would be critical to determining the sufficiency of basis to support distributions. It does not appear to have been considered in the Expert report or in deposition testimony when questioned on basis.
12. In the Expert's Report, there is no indication that a review of the income statement and operating results of the Debtor was performed other than a review of the corporate tax returns. Annual net income or loss is presented as a component of equity on the balance sheet, which then rolls forward into retained earnings on an ongoing basis. A review of operating results would be important in evaluating the solvency of the Debtor in that

amounts may be reflected in operating results, such as the one-time expensing of capital items allowed under Internal Revenue Service (IRS) guidelines, that would merit adjustment on the balance sheet in accordance with generally accepted accounting principles (GAAP). The adjustment on the balance sheet for such items would be significant in determining solvency as they could potentially increase net income which would increase equity.

13. Payments to Jeanne D'Arc Credit Union from the Debtor relative to Mr. Ramos' mortgage were cited as not having a business purpose by the Experts. Payments made on Mr. Ramos' behalf for his mortgage by the Debtor could be considered repayment of amounts loaned to or a distribution of his capital investment in the Debtor. The loan taken by Mr. Ramos in 2019 was a partial refinance of existing amounts due to the Credit Union, as indicated on the closing statement provided in the Memorandum, with approximately $376,000 in cash out to Mr. Ramos. It is unclear and does not appear to have been considered that a portion of the initial mortgage with the Credit Union may have been used to support operations of the Debtor. A review of Mr. Ramos' basis would be important to determine the taxability to Mr. Ramos of any payments. Further, it would be critical to understand what amounts Mr. Ramos loaned to the Debtor and the source of those funds in determining whether the amounts paid to Jeanne D'Arc Credit Union were in fact personal in nature and not a repayment of amounts personally loaned by Mr. Ramos to the Debtor from mortgage proceeds.

## **OBSERVATION THREE: RETURNS PREPARERS, INDEPENDENCE AND ETHICAL STANDARDS**

14. In deposition testimony, the Experts both testified that Wesler was engaged to prepare the 2023 and 2024 corporate returns for the Debtor. Although after the time period considered here, if filed timely, the corporate returns would have been filed prior to the issuance of their Report in July of 2025. In their own testimony, it was indicated that good practice was to obtain detailed client records, including QuickBooks files from clients, when preparing financial statements and tax returns. It would be reasonable that the information used to prepare the 2023 and 2024 corporate tax returns would

5

have given some indication or provided some support for the items that were previously recharacterized in the Wesler Edited Version to loans. Their Report is silent relative to any subsequent information received during preparation of the 2023 and 2024 corporate returns that could have provided substantive support to the nature of the items treated as loans. If the substantiation for amounts recharacterized as loans was not available for review during the Expert's review, it would call into question what was available for preparation of the 2023 and 2024 corporate returns for the Debtor by Wesler. Validation of the accuracy of amounts and classification of items on client provided financial statements is reasonable and good practice when preparing accurate tax returns.

15. The preparer of the returns of the Debtor during the period under review was also identified as a lender of amounts to Debtor. In the Memorandum filed by the Plaintiff and also in testimony from the Experts, the perceived lack of independence by Mr. Mendonca, the Debtor's accountant, calls his credibility and the accuracy of his work into question. Mr. Mendonca did not provide attest services to the Debtors, such as an audit or review, which would require he or his firm be independent of the Debtor. Expert testimony provided that external financial statements were not provided for review.

16. Accountants who prepare internal financial statements for clients do not need to maintain independence if the lack of independence is disclosed. It is unclear whether Mr. Mendonca prepared the Debtor Version of the balance sheets provided to the Experts or whether that was prepared internally by staff of the Debtor.

17. Mr. Mendonca has a valid Certified Public Accountant (CPA) license with New Jersey. A review of his licensure did not indicate any sanctions or complaints against his active license. As a CPA, Mr. Mendonca is subject to ethical requirements when performing work for clients, under State licensing guidelines and also best practices and requirements established by the American Institute of Certified Public Accountants (AICPA). Practitioners can be and are sanctioned by the state licensing authority and the AICPA for substandard work.

18. As a preparer of returns practicing before the Internal Revenue Service (IRS) and other state taxing authorities, there are also requirements and best practices that Mr.

Mendonca must follow when preparing returns. Preparers are **not** required to be independent of their clients to prepare returns. In fact, preparers routinely help management make decisions about categorization and treatment of items on tax returns to provide the most beneficial and tax efficient reporting for clients. The level of involvement and assistance with decision making for clients would render the preparer to not be independent.

19. The fact that Mr. Mendonca loaned money to the Debtor should not impact his ability to prepare an accurate return. In practice, accountants provide continuing services to clients routinely without full payment of previous amounts billed. It was detailed that amounts were lent to the Debtor by Mr. Mendonca, but it is not clear what portion of amounts owed were for unpaid previously billed fees.

20. As the Experts testified, the reclassification of the loans from equity to a long-term liability is a balance sheet only adjustment. Therefore, income subject to tax would not be impacted by reflecting an item as a loan versus equity on the tax returns. In fact, in Expert testimony, it was indicated the classification of a loan versus equity on the returns would not create a red flag to the IRS. It is not clear why Mr. Mendonca would knowingly misstate the corporate and personal returns of the Debtor and Mr. Ramos when there appears to be no significant financial benefit to doing so.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

Respectfully submitted on the 23rd day of December 2025.

_____
Julie M. Quink, CPA, CFE

Julie Quink, CPA, CFE

*Experience*     October 2011 – Present    Burkhart, Pizzanelli, P.C.    West Springfield, MA
**Senior Manager, Audit /Consulting (2011) Principal (2013), Managing Principal (2015)**
- Responsible for attestation practice, including performing and supervising engagements
- Perform and consult on fraud and forensic engagements
- Management of practice and tax consulting

1995 – October 2011   J.M. O'Brien & Company, P.C.    Springfield, MA
**Director of Audits and Business Issues**
- Responsible for attestation practice, including performing and supervising engagements
- Perform and consult on fraud and forensic engagements

1991 – 1994   KPMG Peat Marwick LLP    Springfield, MA
**Senior Accountant**
- Responsible for performing and supervising attest engagements

2014 – Present     Elms College, Chicopee, MA
**Adjunct Professor**
- Responsible for creating Forensic Accounting Curriculum in 2014
- Teaching professor for Principles of Forensic Accounting & Fraud Examination 2014 to present

*Education*     1987 – 1991    Elms College      Chicopee, MA
- B.A., Accounting and Business Management
- Graduated Magna Cum Laude

*Affiliations*     Member of the American Institute of Certified Public Accountants
Member of the Massachusetts Society of Certified Public Accountants
Member of the Association of Certified Fraud Examiners
Treasurer, Hardwick Rescue & Emergency Squad, Inc.
Treasurer, Quaboag Hills Chamber of Commerce
Finance Committee, East Quabbin Land Trust
Board Member and Treasurer, Estate Planning Council of Hampden County, Inc.
Adjunct Faculty, Elms College, MBA Accounting Program
School Committee Chair, Pathfinder Regional Vocational Technical High School
President of the Board, Great Springfield Senior Services, Inc.
Trustee, Baystate Health System
Trustee, Monson Savings Bank
Board Member, Square One

Julie Quink, CPA, CFE

**Summary of Expert Testimony and Work**

- ➢ Edward F. and Florence I. Fedor Trust v Charles M. Fedor, et al
    - Subject Matter:  Partner dispute
    - Nature of Testimony:  Expert Report and Deposition
    - Case Location:  Hampshire Superior Court, Massachusetts
    - Case Number: 06-057
    - Dates:   Various dates in March and May of 2009

- ➢ Commonwealth of Massachusetts vs. Jennifer M. Fox
    - Subject Matter:  Employee embezzlement
    - Nature of Testimony:  Expert Report
    - Case Location:  Franklin Superior Court, Massachusetts
    - Case Number: FRCR2015-00022
    - Dates:   October 28, 2016

- ➢ Commonwealth of Massachusetts vs. Laurie Toomey
    - Subject Matter:  Employee embezzlement
    - Nature of Testimony:  Expert Review of Discovery, Affidavits
    - Case Location:  Superior Court, Dedham Division, Massachusetts
    - Case Number: 1882CR00118
    - Dates:  Various from 2018 through 2022

- ➢ Commonwealth of Massachusetts vs. Bob Francois
    - Subject Matter:  Employee embezzlement
    - Nature of Testimony:  Expert Review of Discovery
    - Case Location:  Norfolk Superior Court, Massachusetts
    - Case Number: 1882CR0266
    - Dates:  Various in 2022

- ➢ Commonwealth of Massachusetts vs. Jeffrey A. Silva
    - Subject Matter:  Employee embezzlement
    - Nature of Testimony:  Expert Review of Discovery
    - Case Location:  Superior Court, Plymouth, Massachusetts
    - Case Number: 1883CR00385-001
    - Dates:  Various in 2019

Julie Quink, CPA, CFE

**Summary of Expert Testimony and Work, continued**

- Commonwealth of Massachusetts vs. Jeffrey Hampton
    - Subject Matter:  Employee embezzlement
    - Nature of Testimony:  Expert Review of Discovery and Affidavits
    - Case Location:  Superior Court, Franklin, Massachusetts
    - Case Number: 2378CR00017
    - Dates: Various in 2023 and 2024

- Commonwealth of Massachusetts vs. Richard N. Martell
    - Subject Matter: Employee embezzlement through advance premium payments
    - Nature of Testimony: Expert Review of Discovery and Affidavits
    - Case Location: Superior Court, Suffolk, Massachusetts
    - Case Number: 2484CR00147
    - Dates: Various in 2024 and 2025

- Affiliated Factory Mutual Insurance Company and Agri-Mark, Inc. v. Pre-Heat, Inc., v. Reed Control Services, Inc, Honeywell Process Solutions v. Reed Control Services, Inc, Etter Engineering and Northeast Combustion
    - Subject Matter: Alleged losses (lost profits) and business interruption
    - Nature of Testimony: Expert Review of Discovery and Affidavits
    - Case Location: U.S. District Court, District of Massachusetts
    - Case Number (Civil Action): 3:22-CV-105323
    - Dates: Various in 2024 and 2025

- Commonwealth of Massachusetts vs. Luiza Wade
    - Subject Matter: Employee embezzlement
    - Nature of Testimony: Expert Review of Discovery and Affidavits
    - Case Location: Superior Court, Worcester, Massachusetts
    - Case Number: 2485CR00140
    - Dates: Various in 2024 and 2025

- Top Line Granite Design, Inc. and Steven Weiss, Trustee v. Jeanne D'Arc Credit Union and Edmilson Ramos
    - Subject Matter: Bankruptcy
    - Nature of Testimony: Expert Review of Discovery and Affidavits
    - Case Location: U.S. Bankruptcy Court, District of Massachusetts, Central Division
    - Case Number (Bankruptcy): 22-40216-EDK
    - Adversary Proceeding No:  24-04010
    - Dates: Various in 2025

Julie Quink, CPA, CFE

**Summary of Expert Testimony and Work, continued**

➤ Expert assistance provided in several private damage and lost profit proceedings